## PEOPLE *v.* WRIGHT

1. WITNESSES—RES GESTAE WITNESSES—ABSENCE AT TRIAL—EVI-
   DENCE—PRELIMINARY EXAMINATION TESTIMONY—ADMISSIBILITY.

   Trial court's actions in excusing the production of a *res gestae*
   witness and in permitting his preliminary examination testi-
   mony to be read at defendant's trial were proper where the
   record supported the court's findings that the local police
   department had made a good faith effort to locate him by
   contacting his stepfather, former employer, and an out-of-state
   police department about an address in that state provided
   by that witness, and that neither the local nor the out-of-state
   police departments had any knowledge of his current where-
   abouts.

2. APPEAL AND ERROR—CRIMINAL LAW—INSTRUCTIONS TO JURY.

   The Court of Appeals will not consider defendant's contention
   that a jury instruction in a criminal case was reversibly
   erroneous where he neither objected to the instruction when
   given, nor did he request an additional instruction and where
   no clear injustice will be done (GCR 1963, 516.2).

Appeal from Recorder's Court of Detroit, George
W. Crockett, Jr., J. Submitted Division 1 March
14, 1970, at Detroit. Decided April 27, 1970. Ap-
plication for leave to appeal filed May 9, 1970.

Charles E. Wright was convicted of second-degree
murder. Defendant appeals. Affirmed.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 343.
   Use in criminal case of testimony given or former trial, or pre-
   liminary examination, by witness not available at present trial.
   15 ALR 295 and s. 159 ALR 1240.
[2] 5 Am Jur 2d, Appeal and Error § 892.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*Carl Levin* (Defenders' Office—Legal Aid and Defender Association of Detroit), for defendant on appeal.

Before: QUINN, P. J., and T. M. BURNS and O'HARA,* JJ.

QUINN, P. J.   Defendant was arrested on a charge of first-degree murder, CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).   July 16, 1968, a jury found defendant guilty of second-degree murder, CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549).   He was sentenced and he appeals.

Four persons were present when Howard Thompson was shot and killed March 9, 1968, namely: the victim, defendant, defendant's son and Ralph George (for some unexplained reason, George's name appears as "Georgia" in many places in the trial transcript and in the briefs, but in the preliminary examination transcript, his name clearly appears to be George).   The latter was not present at trial, and his testimony at preliminary examination was read to the jury.   It is defendant's position on appeal that the trial record is not sufficient to justify the absence of the *res gestae* witness George at trial.

George, an itinerant window washer, had been drinking in a bar with the two Wrights.   Shortly after these three persons left the bar, defendant shot Thompson in the presence of George and defendant's

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23, as amended in 1968.

son. George was arrested March 11, 1968 and released the same day after giving a statement to the police. George testified at the preliminary examination March 14, 1968 and was cross-examined by defendant's attorney.

Some time between March 14, 1968 and May 18, 1968, George telephoned the homicide bureau of the Detroit Police Department from St. Paul, Minnesota and gave an address there where he could be located. May 18, 1968, the St. Paul Police Department telegraphed the identification bureau of the Detroit Police Department advising the latter of George's arrest in St. Paul and inquiring if Detroit wanted George. The identification bureau did not know that George was a key witness in the Wright case and telegraphed St. Paul that George was not wanted in Detroit as a defendant.

June 19, 1968, a subpoena was issued for George and returned unserved a few days later. June 23, 1968, the Detroit Police Department telegraphed St. Paul inquiring of the status of the criminal charge against George in St. Paul and advising St. Paul that George was an important witness in a homicide trial set for July 10th in Detroit. In reply, St. Paul advised that the charge against George in St. Paul had been dismissed and that George had no permanent address in St. Paul. July 3, 1968, the Detroit Police advised the St. Paul Police Department of the St. Paul address George had previously given the Detroit Police Department and requested St. Paul to have George contact the Detroit Police Department. St. Paul responded with the information that George had checked in at the address May 7, 1968, checked out May 17, 1968 and had left no forwarding address. Further efforts to locate George through his stepfather in Illinois and his employer in Detroit proved fruitless.

On the basis of the foregoing facts, the trial court found that the Detroit Police Department had made a good faith effort to locate George and to obtain his presence at trial and that his absence was not the fault of the Detroit Police Department. The trial court further found that neither the Detroit Police Department nor the Minnesota authorities knew of the present whereabouts of George. The production of George was excused and his preliminary examination testimony was read to the jury. Neither action was error, as defendant contends. The factual record supports the findings of fact by the trial court and *People* v. *Serra* (1942), 301 Mich 124, supports the ruling on George's absence at trial.

The foregoing determination and CL 1948, § 768.26 (Stat Ann 1954 Rev § 28.1049) sustain the use of George's preliminary examination testimony at trial.

At the conclusion of his jury instructions, the trial judge inquired if there were any objections to the charge as given. The prosecuting attorney and defense counsel stated they had none. The trial judge then inquired if there were any additional requests to charge. Defense counsel replied, "I think it was very well done." During deliberation, the jury requested further instruction or a repetition of the instruction given on the issue of intoxication. The trial judge repeated the instruction previously given on this issue. Neither side objected thereto nor requested additional instructions.

Defendant now asserts that the instruction on intoxication was reversibly erroneous because it did not completely inform the jury of the legal effect of defendant's drunkenness as it related to the offense of manslaughter. GCR 1963, 516.2 precludes consideration of this issue unless clear injustice will be done if we fail to do so. *People* v. *Paul F. Baker* (1967), 7 Mich App 471. Read in its

entirety, the charge of the trial court was correct and no injustice appears.

Affirmed.

All concurred.